UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER ELLIS ANDERSON,<br><br>    Plaintiff,<br><br>  v.<br><br>Warden CADEN; et al.,<br><br>    Defendants. | No. C 04-2084 SI (pr)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Roger Anderson, an inmate at Salinas Valley State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983 concerning the allegedly improper administration of antipsychotic medications. Defendants now move for summary judgment on the grounds that the undisputed facts show that they are entitled to judgment as a matter of law on Anderson's due process claim and on their qualified immunity defense. For the reasons discussed below, the motion for summary judgment will be granted.

## BACKGROUND

This action concerns the administration of antipsychotic medications to Anderson on November 7, 2003 at Salinas Valley State Prison. The only two defendants remaining in this action are two correctional officers who physically restrained Anderson while medical staff administered the antipsychotic medication that day. Unless otherwise noted, the following facts

are undisputed.

Anderson was an inmate and defendants Hildreth and Baker were correctional officers at Salinas Valley State Prison on November 7, 2003.

Under California law, the Keyhea procedures govern the involuntary administration of antipsychotic medications.[1] The Keyhea procedures are set out in the October 31, 1986 Order Granting Plaintiffs' Motion For Clarification And Modification of Injunction And Permanent Injunction filed in Keyhea v. Rushen, Solano County Superior Court Case No. 67432. See http://www.oah.dgs.ca.gov/laws/keyhea.asp. The Keyhea injunction provides procedural requirements and substantive standards for medication of different durations. In order for an individual to be involuntarily medicated in excess of three days, a notice of certification must be signed by both the chief psychiatrist at the treatment facility and a physician or psychologist who participated in the evaluation of the prisoner, and it must be delivered to the prisoner. The notice of certification permits involuntary medication of the prisoner for no more than 21 additional days, and the prisoner is entitled to a certification review hearing within 10 days of the initial involuntary medication. Involuntarily medication more than 24 days after the initial medication requires a court order.

Before any of the events complained of in this action occurred, Anderson had been under another Keyhea order for involuntary medication. The earlier Keyhea order expired in May 2003, about five months before the events occurred that form the basis for the present complaint.

On October 30, 2003, Anderson was admitted to the Correctional Treatment Center ("CTC") at Salinas Valley to initiate the Keyhea process. Psychologist A. Thompson wrote a lengthy progress report about his decision to send Anderson to the CTC for the Keyhea process. Id. Dr. Thompson wrote that (a) Anderson had attacked another inmate (apparently without provocation) by trying to hit him and then grabbing him by the neck to choke him, (b)

---

[1] In Keyhea v. Rushen, 178 Cal. App. 3d 526 (Cal. App. 1986), the state appellate court "upheld a consent decree affirming the right of state prisoners to refuse antipsychotic medications except under certain limited circumstances." In re Qawi, 32 Cal. 4th 1, 21 (Cal. 2004).

2

1  Anderson's behavior had become increasingly aggressive and psychotic, and his paranoid
2  delusions had become more pervasive, (c) Anderson's behavior seemed "to be directly linked to
3  his mental illness," and (d) Anderson had been refusing to take his medications on a consistent
4  basis since his previous Keyhea order had expired in May 2003. Morelos Decl., Exh. 1. Dr.
5  Thompson wrote that Anderson was being sent to the CTC to be stabilized and to have the
6  Keyhea procedure initiated; Anderson was "unable to program on this EOP [extended outpatient
7  placement] yard due to his hostile and aggressive behaviors towards others." Id. at 4.

8      Dr. Tashavi admitted Anderson to the CTC and wrote in the interdisciplinary progress
9  notes dated October 30, 2003, that he would "admit to CTC - SC & begin Keyhea meds."
10 Morelos Decl., Exhs. 2 and 3. Anderson was admitted to the CTC with an admitting diagnosis
11 of "psychosis." Morelos Decl., Exh. 3.

12     Clinical staff at the CTC prepared a "Notice of Certification" to medicate Anderson.
13 McElroy Decl., Exh. 1. The form Notice was signed by Dr. Tashavi as the evaluating
14 physician/psychologist and by the chief psychiatrist (or designee) on October 30, 2003. The
15 Notice stated that based on an evaluation of Anderson, the authors concluded that Anderson was,
16 as a result of a mental disorder, a danger to others. See McElroy Decl., Exh. 1. In the portion
17 of the Notice that was for the facts that formed the basis of the allegation, Dr. Tashavi wrote
18 "Patient has poor insight into his mental illness. Denies having any psychiatric problems; he is
19 paranoid. He recently assaulted another inmate without provocation. He has been noncompliant
20 with his meds." Id. The Notice stated that the inmate had been notified of the evaluation and
21 had been advised of but unable or unwilling to accept medication on a voluntary basis. The
22 doctors signed on the form that they certified "this inmate to receive involuntary medication
23 related to the mental disorder for no more than twenty-one (21) days beginning the 30th day of
24 10/03 at 12:00." Id.

25     The involuntary medication of Anderson began at 12:00 on October 30, 2003, under the
26 supervision of staff psychiatrist W. H. Welcher. McElroy Decl., Exh. 3. Dr. Welcher's report
27 prepared November 5, 2003 discussed the commencement of involuntary medication, listed the
28 psychiatric diagnosis for Anderson as "schizophrenia, acute and chronic" and described the basis

3

for the determination that he was a danger to others. Id.  Dr. Welcher also noted that "[o]bviously his erratic and inconsistent use of psychiatric medications has caused a worsening of his condition until the point where he has become dangerous to others and now has a full-blown psychotic clinical picture." Id.

The Notice of Certification was delivered to Anderson four days later by a social worker on November 3, 2003. McElroy Decl., Exh. 1. She also filled out a form dated November 3, 2003 in which she checked off boxes that stated she had informed Anderson of the various rights he had in connection with the involuntary medication process. McElroy Decl., Exh. 2.

Anderson apparently took the ordered medication without incident until November 7, 2003.

On November 7, a nurse demanded that Anderson take his medication. Anderson refused, saying that his 21-day Keyhea certification had terminated and that he had a right to an administrative hearing before he could be involuntarily medicated.  A correctional officer, defendant Hildreth, also ordered him to take his medication. Anderson again refused and stated that he had a right to a hearing, to which Hildreth responded that he was not concerned with regulations. Several other officers, including defendant Baker, then entered Anderson's cell and held him down while he was given an injection of medication.

On December 2, 2003, an administrative judge issued an order that Anderson was a danger to others as a result of a mental defect or disorder, and he could therefore be treated involuntarily with antipsychotic medications for a period of 180 days. Defendants' Exh. 1.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Monterey County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

4

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, when a party challenges the merits of the opponent's claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendants' qualified immunity defense, the moving party bears the burden of proof at trial and must come forward with evidence which would entitle the defendant to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). A defendant must establish the absence of a genuine issue of fact on each issue material to the affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See

5

Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Anderson's verified complaint is considered in deciding the pending motion.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

## DISCUSSION

A.   Involuntary Medication

Both California law and the Due Process Clause itself confer upon an inmate a right to be free from the arbitrary administration of antipsychotic medication. See Keyhea injunction, supra; Washington v. Harper, 494 U.S. 210, 221-22 (1989). However, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Id. at 227. The decision whether to medicate an inmate against his will satisfies due process when facilitated by an administrative review by medical personnel not then involved in the inmate's treatment. Id. at 233. Due process does not require a judicial hearing before an inmate may be involuntarily medicated, does not require that the hearing be conducted in accordance with the rules of evidence, and does not require a "clear, cogent, and convincing" standard of proof. Id. at 228, 235. Due process is satisfied if the inmate is provided with notice, the right to be present at an adversarial hearing, and the right to present and cross-examine witnesses. Id. at 235. Appointment of counsel is not required; the provision of a lay adviser who understands the

6

psychiatric issues involved is sufficient protection. Id. at 236.

Harper's procedural protections may not apply in an emergency situation. In Kulas v. Valdez, 159 F.3d 453, 456 (9th Cir. 1998), cert. denied, 528 U.S. 1167 (2000), the court appeared to agree that an emergency could excuse compliance with notice and a pre-medication hearing, even though the facts of the case before it did not present an actual emergency: "There is no evidence that Kulas posed such an imminent and serious danger to himself or others that the minimal procedural requirements of Harper – notice and the right to be present at and participate in a hearing – could not be met." Kulas, 159 F.3d at 456; see also Hogan v. Carter, 85 F.3d 1113, 1116-17 (4th Cir.), cert. denied, 519 U.S. 974 (1996) (Harper procedural protections do not apply in emergency).

California's Keyhea procedures differ from those approved in Harper in that the medication starts before the hearing occurs. Under the Keyhea procedures, doctors decide that medication is medically necessary and start the medication, with the hearing scheduled to be held within 10 days. See McElroy Decl., Exh. 2 (patient is notified "you have been certified to receive involuntary antipsychotic medications for a period of up to 21 days" and "you have a right to a certification review hearing. The hearing will be held within 10 days of the initial involuntary medication (unless you request judicial review) to determine whether probable cause exists for the certification.") Although the Keyhea injunction has governed the administration of antipsychotic medications for two decades in California, there does not appear to be any published federal court case upholding or discussing its constitutionality.[2] This court need not decide the constitutionality of the Keyhea process, however, because defendants contend and plaintiff does not dispute that this case involved an emergency that permitted medication to be commenced without the Harper procedural safeguards. See Kulas, 259 F.3d at 456.

---

[2] The court requested defendants to address in their reply brief "whether there is any class action consent decree, judgment or order in a federal court case that requires compliance with the state-mandated Keyhea procedures or sets forth some other procedural steps that must be followed in administering involuntary medications to California prisoners at Salinas Valley State Prison." Aug. 7, 2006 Order, pp. 1-2. Defendants did not file a reply brief – perhaps because plaintiff did not file an opposition to the motion – so the court does not have the benefit of this potentially helpful information.

7

Anderson does not dispute defendants' evidence that the involuntary medication was needed as an emergency measure because Anderson posed an imminent danger to others. It is undisputed that the Keyhea procedure was started and medication administered after Dr. Thompson evaluated Anderson and wrote of the incident where Anderson attacked another inmate:

> Mr. Anderson was noticed by custody on yard to be pacing about 15' away from the mental health bldg. As an inmate walked by pt, pt struck out @ the inmate with his fist without any noticeable provocation by the inmate. The inmate had just retrieved his photo identification card from custody. The inmate turned away, avoiding being struck by pt & asked why pt struck out @ him. The two then turned toward each other & pt was able to grab the inmate by the neck, trying to choke inmate. Custody took pt to ground & pt released inmate.

Morelos Decl., Exh. 1. The incident was just the latest of several that showed increasingly aggressive acts by Anderson that could provoke violent reactions by other inmates and correctional staff. See id. at 3-4. Dr. Thompson also wrote that Anderson had become increasingly aggressive and his psychotic symptoms, including paranoid delusions, had escalated. The undisputed evidence shows that Anderson posed an imminent danger to others as a result of his mental illness. Under Kulas, the urgency and immediacy of Anderson's threat to other persons as a result of his mental illness allowed the commencement of the medication of Anderson without a pre-medication hearing. Anderson received procedural protections, although the review of the decision occurred after (rather than before) the medication began. A pre-medication hearing under the circumstances might well have required that Anderson be physically restrained for the safety of all around him until the hearing was held, but such restraints also "can have serious physical side effects when used on a resisting inmate, . . . as well as leaving the staff at risk of injury while putting the restraints on or tending to the inmate who is in them." Harper, 494 U.S. at 227. Under the circumstances, the decision to medicate Anderson before the hearing occurred did not violate his right to due process.

Anderson's complaint asserted that his medication was improper and his due process rights were violated because the 21-day Keyhea order had expired. Anderson's math is wrong. He does not dispute that the Notice of Certification (i.e., the document that authorized the involuntary medication for 21 days starting on October 30, 2003) was signed on October 30,

8

2003. Twenty-one days had not passed between October 30 and November 7, 2003, which was the date on which Anderson claimed that he was impermissibly medicated and the constitutional violation occurred. To the extent Anderson is referring to the expiration of the earlier Keyhea order, the expiration of that order in May 2003 is irrelevant because he was not being medicated pursuant to that order and instead was being medicated pursuant to the Notice of Certification dated October 30, 2003.

On the undisputed facts, Anderson's medication was in compliance with the procedural requirements of the Keyhea injunction. The Notice of Certification tracks the Keyhea injunction's form language and provides all the information needed to administer involuntary medications for 21 days. The Notice and an advisement of the inmate's rights were delivered to Anderson within four days, also in compliance with the Keyhea injunction.

On the undisputed facts, Anderson's medication met the substantive criteria for medication under Keyhea and Harper. Dr. Tashavi and the chief psychiatrist or his designee concluded that Anderson suffered a harmful mental disorder and was a danger to others. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg v. Romeo, 457 U.S. 307, 323 (1982). Although Youngberg involved decisions for the appropriate training of institutionalized mentally retarded persons, it does reflect the Court's deference to professional medical opinions. Indeed, Harper itself acknowledged that medical personnel were better-suited to deciding the treatment issues than were judicial officers: "We cannot make the facile assumption that the patient's intentions, or a substituted judgment approximating those intentions, can be determined in a single judicial hearing apart from the realities of frequent and ongoing clinical observation by medical professionals." Harper, 494 U.S. at 231-32; see also id. at 230-31 n. 12 (Court should not discount the "benefits of these [antipsychotic] drugs, and the deference that is owed to medical professionals who have the full time responsibility of caring for mentally ill inmates like respondent and who possess, as courts do not, the requisite knowledge and expertise to

9

determine whether the drugs should be used in an individual case.")

Anderson does not demonstrate a triable issue of fact that the doctors who signed the Notice of Certification failed to comply with due process requirements. He does not present probative evidence which calls into question the presumptive reliability of the doctors' decisions. On the submissions of the parties, Anderson's constitutional rights were not violated by the decision to medicate him involuntarily.

The only defendants remaining in this case are two correctional officers who restrained Anderson so that a nurse could inject the medication into him on November 7, when he resisted the injection. There is no evidence that they played any role in the decision-making process about whether to medicate Anderson, but simply assisted in restraining him so that the medical decision made by medical staff could be implemented by medical staff. While it is far from certain that the correctional officers would be liable if the involuntary medication order was unconstitutional, it is certain that they would not be liable for merely restraining Anderson while he received his medications when the medication decision was constitutionally permissible. The medication decision was constitutionally permissible. The defendants are entitled to judgment as a matter of law on Anderson's claim that they violated his right to due process by restraining him while he was involuntarily medicated on November 7, 2003.

B.  Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

To determine whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation

he confronted. Saucier v. Katz, 533 U.S. 194, 201 (2001). The first prong is a threshold question; "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

The court has concluded that the undisputed evidence fails to show a violation of Anderson's constitutional rights. There is no need to proceed to the second step of the Saucier analysis. Defendants are entitled to qualified immunity as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants are entitled to judgment as a matter of law on Anderson's claim and on their defense of qualified immunity. Defendants' motion for summary judgment is GRANTED. (Docket # 35.) Judgment will now be entered in favor of defendants and against Anderson. The clerk shall close the file.

IT IS SO ORDERED.

Dated: February 9, 2007               _____
                                       SUSAN ILLSTON
                                       United States District Judge